IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR MOHAMMED REZAQ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 23-cv-03189-DWD |
| | ) |
| DANIEL SPROUL, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Petitioner Omar Mohammed Rezaq, who is currently incarcerated at USP-Marion, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Petitioner challenges the United States Parole Commission's decision denying his request for mandatory parole pursuant to 18 U.S.C. § 4205(d) (Doc. 1). Petitioner is represented by counsel, but also seeks leave to proceed *in forma pauperis* (Doc. 3). The Petition is now before the Court for preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases in United States District Courts.[1] Rule 4 provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

## Discussion

---

[1] Rule 1(b) of those Rules gives this Court the authority to apply the rules to other habeas corpus cases, such as this action under 28 U.S.C. § 2241.

1

On October 7, 1996, Petitioner was sentenced to life imprisonment after a jury found Petitioner guilty of air piracy resulting in death, in violation of 49 U.S.C. § 1472(n) (1994)[2] (Doc. 1, p. 3); *see also Rezaq*, 134 F.3d 1121.  The acts underlying his conviction occurred in 1985, when Petitioner, a foreign nationalist, was a member of a Palestinian terrorist organization.  *Rezaq*, 134 F.3d at 1126.  As detailed by the United States Court of Appeals for the District of Columbia, in the evening of November 23, 1985, Petitioner, along with two others, boarded Air Egypt Flight 648 in Athens and hijacked an airplane.  *Id.*  After the plane arrived in Malta, Petitioner demanded that the aircraft be refueled and threatened to shoot a passenger every fifteen minutes until his demand was met.  *Id.*  Petitioner carried out his threat, killing multiple victims.  *Id.*  In the evening of November 24th, nearly one day after the hijacking began, Egyptian commandos stormed the plane in what the Appellate Court described as a "seemingly incompetent" operation where commandos fired indiscriminately, setting off an explosive device, and causing the aircraft to burst into flames.  *Id.*  A total of fifty-seven passengers were killed, in addition to two of the hijackers.  *Id.*

---

[2] This section has been amended, but at the time of Petitioner's prosecution, provided:
    (1) Whoever aboard an aircraft in flight outside the special aircraft jurisdiction of the United States commits an "offense," as defined in the Convention for the Suppression of Unlawful Seizure of Aircraft, and is afterward found in the United States shall be punished—
    (A) by imprisonment for not less than 20 years; or
    (B) if the death of another person results from the commission or attempted commission of the offense, by death or by imprisonment for life.
    (2) A person commits 'an offense,' as defined in the Convention for the Suppression of Unlawful Seizure of Aircraft, when, while aboard an aircraft in flight, he—
    (A) unlawfully, by force or threat thereof, or by any other form of intimidation, seizes, or exercises control of, that aircraft, or attempts to perform any such act; or
    (B) is an accomplice of a person who performs or attempts to perform any such act.
*United States v. Rezaq*, 134 F.3d 1121, 1127 (D.C. Cir. 1998).

Authorities in Malta charged Petitioner with murder, attempted murder, and hostage taking. *Id.* Petitioner pled guilty and was sentenced to 25 years' imprisonment. Maltese authorities released Petitioner seven years later, in February 1993, and allowed him to board a plane to Ghana. *Id.* Petitioner eventually proceeded to Nigeria, where Nigerian authorities placed Petitioner in the custody of FBI agents, who then transported Petitioner to the United States where he was found guilty of air piracy. *Id.* Petitioner did not challenge the hijacking at trial, but instead invoked the defenses of insanity and obedience to military orders. *Id.*

Petitioner has not previously filed a post-conviction petitioner, and is presently incarcerated in this District at USP Marion (Doc. 1, p. 3). Petitioner alleges that he is eligible for parole pursuant to the Parole Commission and Reorganization Act of 1976 ("PCRA"), 18 U.S.C. § 4201-4218 (Doc. 1, p. 3). The PCRA of 1976 was repealed by the Sentencing Reform Act of 1984, but remains in force for persons, like Petitioner, whose crimes occurred before November 1, 1987. *See Von Kahl v. Segal,* 19 F.4th 987, 988 (7th Cir. 2021). Petitioner argues that he is entitled to mandatory release under Section 4206(d), which sets a presumptive cap on how long a prisoner must serve a sentence:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

3

18 U.S.C. § 4206(d). "Section 4206(d) illustrates one of the ways in which the 1987 Act changed federal sentencing. Today a person sentenced to life in prison serves life in prison, unless clemency or compassionate release intervenes. But a person sentenced to "life" under older law was eligible for parole in ten years, § 4205(a)—sooner if the judgment so provided under § 4205(b)(2)—and is presumptively entitled to parole after thirty, § 4206(d)." *Von Kahl,* 19 F.4th at 988.

Petitioner avers that his mandatory parole date was July 15, 2023 (Doc. 1, p. 5), but that he was wrongfully denied parole by the United States Parole Commission following a hearing held on February 28, 2023 (Doc. 1, p. 5). Petitioner raises six grounds for relief concerning the Commission's decision, including:

> One: The Commission erred in predominately relying on the nature and circumstances of the underlying offense;
>
> Two: The Commission erred in citing two minor infractions in support of its reasonable probability finding;
>
> Three: The Commission's uninformed speculation that Petitioner's "temperament and character" had not changed since 1984 ignores the overwhelming evidence otherwise, is inconsistent with the premise of § 4602(d), and unreasonably discounts both social science research directly relevant to Petitioner and the BOP's expert-driven risk analysis;
>
> Four: The Commission considered an improper factor when it found Petitioner has not served a sufficient amount of time for his offense;
>
> Five: Absent its consideration of improper factors the Commission cited no evidence that could rationally support a finding of reasonable probability; and
>
> Six: The Commission violated 18 U.S.C. § 4208(b)(2) when it failed to disclose a letter from the Department of Justice it received four days before the mandatory parole hearing.

(Doc. 1, pp. 2-3). Because of these errors, Petitioner seeks a writ of habeas corpus ordering Respondent to transfer his custody to the Director of Homeland Security to effectuate his deportation from the United States (Doc. 1, p. 5).

28 U.S.C. § 2241 petitions challenge "the fact or duration of confinement", or the execution of a sentence, rather than the imposition of a sentence. *Hill v. Werlinger*, 695 F.3d 644, 645 (7th Cir. 2012) (citing *Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000)); *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). Section 2241 is also the "appropriate means to contest the Bureau of Prisons' calculation of the date on which a prisoner must be released", *Von Kahl,* 19 F.4th at 989, and for challenging a final determination made by the Parole Commission. *See Romano v. Baer*, 805 F.2d 268 (7th Cir. 1986) (2241 petition appropriate method to challenge decision of Parole Commission to continue petitioner beyond term provided by parole guidelines); *see also Lewis v. U.S. Parole Comm'n*, 132 F. App'x 659, 660 (7th Cir. 2005) (unpublished) (finding arguments concerning the Commission's miscalculation of parole date was properly brought under § 2241) (citing *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (challenges to the computation of a sentence must be brought under 28 U.S.C. § 2241). Accordingly, Petitioner's 2241 challenge to the Parole Commission's decision denying his request for mandatory parole survives preliminary review.

**IT IS HEREBY ORDERED** that Respondent Daniel Sproul shall answer or otherwise respond to the Petition (Doc. 1) by **November 20, 2023**. This preliminary order to respond does not preclude Respondent from raising any objection or defense Respondent may wish to present. Service upon the United States Attorney for the

Southern District of Illinois, 750 Missouri Avenue, East St. Louis, Illinois, shall constitute sufficient service.  Petitioner is **ADVISED** of his continuing obligation to keep the Clerk (and each opposing party) informed of any change in his whereabouts during the pendency of this action. This notification must be done in writing and no later than 7 days after a transfer or other change in address occurs. Failure to provide notice may result in dismissal of this action. See Fed. R. Civ. P. 41(b).

Finally, Petitioner's Motion to Proceed *in forma pauperis* (Doc. 3) is **DENIED**. Two issues must be resolved before *in forma pauperis* status can be granted: the plaintiff must show that he is indigent by submitting an affidavit "that includes a statement of all assets [he] possesses [showing] that [he] is unable to pay such fees or give security therefor," and the plaintiff's complaint must not be clearly frivolous or malicious. 28 U.S.C. § 1915(a)(1).  Here, the Court questions Petitioner's claim of indigency.  In his affidavit, Petitioner states that he currently has the sum of $374.04 in his prison trust fund account, and receives $55.50 in gross pay or wages each pay period (Doc. 3).  The current fee for habeas corpus filings is $5.00.  Accordingly, based on a review of Petitioner's trust fund statement and the statements in his affidavit, the Court finds that Petitioner is not indigent and can pay the $5.00 filing fee for this case.

**SO ORDERED.**

Dated: October 24, 2023   /s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge